ANN NICOLINE CHARLSON, Appellant, v. T. E. CHARLSON, et al., Respondents.

(187 N. W. 418.)

**Executors and administrators — statute held to permit $1,500.00 exemption in addition to widow's absolute exemptions.**

1. Section 8725 C. L. 1913 construed and held to permit an exemption of $1500.00 to the surviving widow in addition to the absolute exemptions.

**Husband and wife — complaint to set aside antenuptial agreements made without disclosure of husband's wealth held to state cause af action.**

2. A complaint alleging the making of antenuptial and postnuptial agreements without disclosure of large property interests of the husband is *held,* for reasons stated in the opinion, to state a cause of action in equity to invalidate the same.

**Husband and wife — complaint alleging fraudulent conspiracy and misrepresentations by heirs concerning antenuptial and postnuptial agreements held to state cause of action in equity.**

3. A complaint alleging fraudulent conspiracy and misrepresentation by the heirs of a deceased person concerning widow's rights in antenuptial and postnuptial agreements and the allowance of exemptions is *held,* for reasons stated in the opinion, to state a cause of action in equity for the allowance of her exemptions out of the estate.

Opinion filed March 11, 1922.

Equitable action in District court, Williams county, *Lowe, J.* to set aside ante-nuptial and post-nuptial agreements and the final decree in an estate. The plaintiff has appealed from an order sustaining a demurrer to the complaint.

Reversed.

*Kvello* & *Adams,* for appellant.

"In a proceeding for the administration of the property of a decedent, a county court is without jurisdiction to determine the validity of an ante-nuptial settlement had between deceased and his widow." Wilson v. Wilson, 132 Pac. 67.

"Ante-nuptial agreements made prior to marriage between the parties about to be married, concerning and representing their individual and separate property may be upheld as valid as to property exclusive of the homestead exemption as defined by the laws of North Dakota, but of the homestead exemption such ante-nuptial agreements are void as being contrary to public policy and welfare and protection of the home, and such homestead exemptions cannot be waived before the arrival of the appropriate time of claiming it." Swingle v. Swingle, 36 N. D. 610, 162 N. W. 912; Cyc. Vol. 21 p. 1250.

"All parties having or claiming an interest in real property must be made parties to actions concerning the title thereof." Murdock v. Hanson, 23 N. D. 280, 136 N. W. 236.

The further fact that all the defendants may not be equally affected makes no difference. Section 256, Vol. 1 Corpus Juris, p. 1093.

"In those states whose statutes provide a complete system of probate procedure and confer exclusive jurisdiction of estates of deceased persons upon probate courts during the administration of the estate. It becomes necessary to invoke the aid of equity to accomplish some particular thing that tribunal will after the accomplishment of the particular purpose send the case or cause back to the probate court for further administration rather than take the entire proceedings away from the usual form. The jurisdiction of equity should cease with its necessity." Reinholdt v. Gartile, 33 Ark. 727; Burton v. Burton, 21 Pac 847, (Calif.) Cawdrey v. Hitchock, 103 Ill. 262; Domestic Missionary Society, etc. v. Pells, 54 Am. St. Rep. 888 (Vermont) 35 Atlantic, 467.

*Craven & Converse,* for respondents.

"A party who seeks the aid of equity in relieving against a judgment on the ground of fraud must set forth the specific facts constituting the alleged fraud, and it is not sufficient to incorporate a general allegation of fraud in the complaint." Bergen Twp. v. Nelson Co. 33 N. D. 247; Marshall-McCarthney Co. v. Holloran, 15 N. D. 71; 9 Ency. Pl. & Pr. p. 691; 16 Cyc. 231; 22 Cyc. 929; 23 Cyc. 1041; 9 Ency. Pl. & Pr. pp. 691, 692; Boyd v. Wyley, 18 Fed. 355.

With the knowledge possessed by plaintiffs, due diligence required that they should make some inquiry and investigation as to what disposition their father had made of his property. See also as bearing upon the question general the following cases. Shain v. Sresouich, 104 Cal. 405, 38 Pac. 51; Mulcahey v. Dow; Estate of Davis, 136 Cal. 595, 65 Pac. 412; Estate of Townbley, 120 Cal. 350, 52 Pac. 815; Goodrich v. Ferris, (C. C.) 145 Fed. 884.

The final decree pleaded recites notice was given and served, the complaint conclusively, therefore charges plaintiff with actual notice of the distribution and final decree, such being the facts pleaded she is estopped to come into a court of equity and ask the said final judgment be vacated. Fisher v. Dolwig, 39 N. D. 161; Rickert v. Wardell, Minn. 170 N. W. 915.

Within the limitations incident to the subject matter specified in the constitution, our probate court possesses superior and general jurisdiction, and have implied power to do whatever is reasonably necessary to carry out the powers expressly given." State v. Brown, 113 Minn. 1, 129 N. W. 136, 139; State ex rel. Benz v. Probate Court, (Minn.) 158 N. W. 234; In re Prebost Estate, S. D. 168 N. W. 630.

## Statement.

BRONSON, J. This is an equitable action to invalidate antenuptial and postnuptial agreements and to set aside a final decree in the estate of a deceased person. The plaintiff, the widow, has appealed from an order sustaining a demurrer to the complaint.

The facts, appearing in the complaint, and necessary to be stated, are as follows: The plaintiff, aged 59 years, married the deceased on February 19, 1916. Prior thereto she had acted as his housekeeper. On August 15, 1914, a former wife of the deceased had died leaving him

and five children surviving. In order to obviate objections of the children to the marriage of the plaintiff and deceased, an antenuptial agreement was made. This agreement gave to the plaintiff during their married life the use and occupancy of the deceased's home in Ray, the same upon her death to be the property of the deceased and his heirs. The deceased agreed to maintain the plaintiff as his wife in a manner suitable to his means and station in life; further, that upon the death of the deceased the home should pass to the plaintiff in the event that she should survive him. The deceased released all interest in property owned by the plaintiff; the plaintiff released any and all claims to property of the deceased and any property that might go to her by the death of the deceased, including any statutory allowances. This agreement was made four days before their marriage. Plaintiff alleges that this agreement was secretly prepared; that she knew nothing of the financial worth of the deceased; was not represented by any counsel nor by any friend; that she did not fully understand the contract; that the deceased, her prospective husband, did not inform her of his financial worth, but stated that everything would be all right and urged her to sign so that they could be married and he would see that she would be treated all right; further, that she had no business experience and had only gone to school until about 12 years of age; that then her property interests did not exceed $1,000, which fact was known to the deceased; that then, he was worth in excess of $100,000; that during their married life the deceased had been kind and courteous to her and that they lived happily together until his death, which occurred in Ray, August 27, 1917; that, while the deceased was lying on his deathbed an amendment to this antenuptial agreement was made. This agreement provides that, whereas it is the desire of the deceasd to give to the plaintiff more of the property than is contemplated in the antenuptial agreement, therefore, it is understood that, in the event the plaintiff survives the deceased, she shall have, in addition to the home, as further consideration for such agreement, the sum of $1,500 out of the deceased's estate. This agreement is dated the day upon which the deceased died. Plaintiff alleges that she was not represented by counsel nor by any friend when this agreement was signed; that she made no inquiry concerning its meaning, being then concerned wholly in the serious illness of her husband; that during their married life she did not become acquainted with the property interests nor the financial worth of her husband and that

he did not inform her as to the extent thereof; that he provided for her liberally; that a daughter lived with them as a member of the family; that after the death of her husband one of his sons was appointed as administrator; that he treated her kindly; that he was interested with the deceased in the mercantile business at Ray and that she had every confidence in his honesty and relied implicitly thereon; that she was not advised of the nature nor extent of her husband's estate or of her rights therein; that she never attended any of the probate proceedings; that all papers signed by her in the course of the probate proceedings were signed with understanding that the plaintiff's interests would be protected; that she was at all times ignorant of her rights in the estate and of her exemptions therein. The inventory and appraisement, attached to the complaint, state the amount of the estate, not including the homestead, to be approximately $30,000. Plaintiff alleges that the value of the lands so appraised is far below their true value; that in addition the deceased had lands and other property in Minnesota and Washington. The final decree attached to the complaint dated September 27, 1919, awards to the plaintiff the home and $1,500. The remainder of the property is divided among the heirs.

Plaintiff alleges that she had no notice of the contents of this final decree until December, 1920, when, upon visiting her daughter at Lisbon and consulting counsel, she ascertained the extent and value of the deceased's property, the probate proceedings had, and her right to exemptions. Further, she alleges that the administrator, the children, the attorney, and agents conspired to deprive her of a fair property settlement in the two agreements and by fraud and undue influence and misrepresentation conspired to prevent her from ascertaining the true facts, and, since the death of her husband, through undue influence prevented her from ascertaining and determining the true facts concerning the estate and her rights that she signed the exhibits through a mistake as to the legal effect of the same and without knowledge of the facts or of her rights; that, during the course of probate, she signed various documents through mistake as to their legal effect and meaning and without knowledge of the facts or of her rights; that she failed to claim her statutory exemptions through mistake and without knowledge of her rights; that the home received by her is not of greater value than $2,500. She demands that the agreements be declared null and void; that the final decree be opened and set aside; that her exemptions be legally set aside

to her; that by a new final decree she be awarded her interests in the estate and the administrator and defendants be enjoined from disposing of estate property pending final hearing.

To this complaint a demurrer was interposed upon the grounds that the court has no jurisdiction of the subject of the action; that the complaint does not state facts sufficient to constitute a cause of action; and that several causes of action are improperly united.

## Decision.

Does the complaint set forth a cause of action, in equity, to set aside the antenuptial and postnuptial agreements? In this regard, the gist of plaintiff's cause of action, apparently, is that the antenuptial agreement was secretly prepared; that she was unaware of the financial worth of the deceased and that he did not inform her of his financial worth; that, furthermore, the antenuptial agreement awarded to her nothing beyond her exemptions excepting the remainder of the homestead estate when, then, the prospective husband was worth over $100,000. The plaintiff makes no direct allegations nor contention that deceased fraudulently represented or fraudulently concealed concerning his property either before or after the marriage. The complaint fully shows that the relations between the plaintiff and her husband were happy; that he treated her courteously and kindly and well provided for her. If she was misled, or did not understand concerning his property, apparently it was by reason of her actions, not the actions of the deceased. Nevertheless, the relation of husband and wife is one of special confidence and trust requiring the utmost good faith, and equity closely and rigidly scrutinizes transactions between them to the end that injustice and oppression may not result. In such cases the principle of law is often applied that fraudulent concealment will be presumed and the burden of proof thrown on him, or those claiming under him, to show that full disclosure had been made where the provision made for the wife is grossly disproportionate to the value of the estate. 21 Cyc. 1269; Herr v. Herr (N. D.) 178 N. W. 443, 444; In re Warner's Estate, 210 Pa. 431, 59 Atl. 1113; In re Enyart's Estate, 100 Neb. 337, 160 N. W. 120; Keith v. Keith, 37 S. D. 132, 156 N. W. 910. It is true that in this state dower rights do not obtain. The husband, by his will, might have excluded the wife from any participation in his estate excepting the

statutory allowances and exemptions. The complaint is weak in its allegations to set aside the agreements, nevertheless, under liberal rules of construction applied to pleadings, we are not prepared to say, as a matter of law, that the complaint does not present a cause of action sufficient to support findings in equity of failure to disclose fairly the property of the deceased and of injustice and overreaching thereby resulting.

We are of the opinion, further, that the complaint states a cause of action in equity for allowance of the widow's exemptions. To secure such allowance, this action in equity, based upon grounds of fraud, deception, or misrepresentation, is available and not an action or proceeding in the county court to vacate the final decree after the lapse of one year. Reichert v. Reichert, 41 N. D. 253, 170 N. W. 621. The defendants admit that the county court should have allowed the widow her exemptions. Their contention is that the county court may now do so by correcting the final decree, nunc pro tunc.

In this appeal a question has arisen concerning the amount of exemptions to which the widow is entitled. The construction of § 8725, C. L. 1913, is involved. This statute provides:

"There shall also be set apart absolutely to the surviving wife or husband or minor children all the personal property of the testator or intestate which would be exempt from execution, if he were living, including all property absolutely exempt and other property selected by the person or persons entitled thereto. to amount in value of $1,500.00 according to the appraisement," etc.

Is the widow entitled to receive, in addition to property absolutely exempt, only $1,500 in other property, or is she entitled to an additional $500?

Section 7730, C. L. 1913, provides for the absolute exemptions allowed the head of the family, while alive, from levy and sale upon execution, etc. Section 7731, C. L. 1913, provides that such head of the family may select, from all other of his personal property not absolutely exempt, property not to exceed $500 in value. This statute was in force when the husband died. The present statute amending § 7731 now allows $1,000. Chap. 128, Laws 1919. It is apparent that there are two different statutes; one applying to the property of a person, the head of a family and while alive; the other applying to the property of a. person upon his death. Woods v. Teeson, 31 N. D. 610, 154 N. W. 797. Formerly, $1,500 was allowed, as an additional exemption, to the head of a

family. Section 5518, R. C. 1895. Formerly, the same allowance in amount was made concerning exempt property of a deceased person as § 8725, C. L. 1913, now provides. Section 6391, R. C. 1895. If the construction should obtain that the surviving wife should be entitled to receive $1,500 under § 8725 and, in addition, the amount of additional exemptions allowed the head of a family, then, under former statutes, the surviving wife would have been entitled to a total of $3,000 besides her absolute exemptions. We do not believe that § 8725 contemplates the entire incorporation of the exemptions allowed the head of a family, while alive, and, in addition, the allowance of $1,500. It is apparent that § 7730, referring to the absolute exemptions to the head of a family, while alive, should not wholly be incorporated in the provisions of § 8725. Among the absolute exemptions provided in § 7730 is the homestead as created, defined, and limited by law. This is not contemplated within the provisions of § 8725 for the reason that § 8723 specifically provides for the exemption of a homestead of a deceased person. It would accordingly seem to have been the legislative intent, when these different statutes were enacted, to accord to the head of a family $1,500 as exempt property, and likewise, the same amount to the surviving widow out of the property of a deceased person, all in addition to absolutely exempt property. This court has heretofore held that the surviving widow is entitled to receive the property of the deceased absolutely exempt, in addition to other property of the value of $1,500. Fore v. Fore, 2 N. D. 260, 50 N. W. 712; Woods v. Teeson, 31 N. D. 610, 154 N. W. 797. We are of the opinion that § 8725 is not a cumulative statute and does not award to the surviving widow $1,500 in addition to what the husband would have been entitled if he were living. In other words, the exemption allowed the surviving widow, pursuant to § 8725, is $1,500, plus property absolutely exempt. See Woods v. Teeson, 31 N. D. 610, 154 N. W. 797; Krumenacker v. Andis, 38 N. D. 500, 516, 165 N. W. 524.

We are further of the opinion that the cause of action should be sustained against the demurrer that the court has no jurisdiction of the subject of the action and that several causes of action have been improperly united. Upon these phases of the demurrer, the defendants have made no contentions before this court.

The order is reversed, with costs.

ROBINSON, BIRDZELL, and CHRISTIANSON, JJ., concur.

GRACE, C. J. (concurring in part and dissenting in part). I agree that the complaint sets forth a cause of action in equity, to set aside the antenuptial and postnuptial marital agreements.

I dissent from the conclusion arrived at by the majority as to the construction of 8725, C. L. 1913, which provides as follows:

"*Exempt Personal Property. Disposition of,*—There shall also be set apart absolutely to the surviving wife or husband or minor children all the personal property of the testator or intestate which would be exempt from execution, if he were living, including all property absolutely exempt and other property selected by the person or persons entitled thereto to the amount in value of fifteen hundred dollars according to the appraisement and such property shall not be liable for any prior debt of the decedent except the necessary charges of his last sickness and funeral and expenses of the administration when there are no other assets available for the payment of such charges."

I adhere to the interpretation of the foregoing section, as I gave to it in the case of Krumenacker v. Andis, 38 N. D. 512, 165 N. W. 524.