## Warner's Estate.

*Husband and wife—Antenuptial agreement.*

Where the provision made for a wife, in an antenuptial agreement, is grossly disproportioned to the value of the husband's estate, fraudulent concealment will be presumed, and the burden of proof will be thrown on him, or those claiming under him after his death, to show that full disclosure had been made to the wife of the value of his estate.

Argued Oct. 31, 1904. Appeal, No. 190, Oct. T., 1904, by R. E. Warner and Lawrence Warner, from decree of O. C. Allegheny Co., June T., 1904, No. 155, dismissing exceptions to the account of Fidelity Title and Trust Company, administrator of E. S. Warner, deceased. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Exceptions to adjudication. See Warner's Estate, 207 Pa. 580.

From the record it appeared that the decedent, E. S. Warner, and Mary Sands being in contemplation of marriage executed an agreement in writing on July 6, 1897, by which they relinquished all marital rights in each other's estate.

On the day of the wedding, August 11, 1897, they signed the following paper:

" It is hereby understood and agreed by and between the parties to the foregoing contract that the estate and property now owned and possessed by the said E. S. Warner, consists of a house and lot situate at No. 16 Ninth street, Pittsburg, Pa.,

of the value of about $15,000 and of a house and lot situate at No. 418 Penn avenue, Pittsburg, Pa., of the value of about $25,000 and of personal property consisting only of his household goods and furniture at his residence."

When the balance shown by the account of the administrator came up before the orphans' court for distribution, the widow claimed one third thereof and the two sons of the decedent, the appellants, set up the antenuptial contract as a bar to her claim. The auditing judge awarded one third of the estate to the widow.

Exceptions filed by the sons were dismi⸱⸱⸱          ⸱⸱e following opinion by HAWKINS, P. J.:

The cases which have sprung out of antenuptial contracts may be appropriately divided into two classes: (1) those in which, notwithstanding the prospective wife's ignorance of the extent and value of the husband's estate, the contract was sustained because the court found that in the circumstances her provision was reasonable; and (2) those in which the contract was set aside because the husband's representative failed to show that a disproportionate provision was made with the wife's knowledge of the extent and value of his estate: Neely's Estate, 124 Pa. 406. The cases of Smith's App., 115 Pa. 319 and Ludwig's App., 101 Pa. 535 are examples of the first class; and Kline v. Kline, 57 Pa. 120; Bierer's App., 92 Pa. 265 of the second. The reason which underlies the second class, with which we are concerned here, is that the parties deal with each other, not like strangers at arms length, but with the openness and fairness which the confidential relation existing between them necessarily implies, and whose absence constitutes a fraud which vitiates the transaction. It is, therefore, well settled that where the provision made for the wife is grossly disproportioned to the value of the husband's estate, fraudulent concealment will be presumed and the burthen of proof thrown on him to show that full disclosure had been made. Tested by this principle, how stands the present case? When this contract was before the Supreme Court in the contest over its validity which grew out of the grant of letters, Mr. Justice BROWN said that " it was so harsh and unreasonable on its face as to raise the presumption " that Dr. Warner " designedly

concealed " from Miss Sands " the value of his estate at the
time it was executed." The presumption that the appellee
was not informed of the value of his estate at that time be-
comes almost conclusive in the light of the testimony of his
attorney who prepared the paper and witnessed its execution.
Having subsequently, as he testified, examined the authorities
and satisfied himself that trouble might arise from " an allega-
tion on the part of the widow that she did not have full in-
formation as to the amount of the estate of the intended hus-
band at the time of execution of the paper," he deemed it
prudent for the protection of his client to have added to it the
paper which the parties signed on August 11, 1897, the day of
the wedding. " If this contract is to be sustained, it will only
be after those claiming under the deceased husband have, by
proper proof, overcome the presumption that there was con-
cealment from the wife, amounting to fraud upon her, of the
value and extent of his estate." The question now for deci-
sion is whether or not this burthen has been sustained ? Analy-
sis of the evidence will show that it has not. Reliance for
this purpose is placed upon additional testimony given by Dr.
Warner's attorneys. Taking up this testimony it is important
to notice in the first place that in the senior counsel's examina-
tion in chief in the contest for letters, he said nothing about
Miss Sands having been informed of the " value and extent "
of Dr. Warner's estate when the first paper was executed. On
cross-examination, however, he " thought " she had been in-
formed of its " amount " but not of its " value." He did not
attempt to state what had been said ; if he had been positive
as to this he would naturally have gone into particulars, for
this was obviously vital ; and the fact that he found it neces-
sary to have the second paper signed with a view to prevent
" an allegation " by the widow of lack of " full information "
would seem to imply at least uncertainty in his mind at that
time as to the fact. If he could not give particulars then, the
improbability of his being able to do so a year later affects his
credibility. The value of his testimony is further impaired by
the fact that while he states his son informed Miss Sands of the
property Dr. Warner had, his son testified that he only men-
tioned two pieces of that property by way of illustration ; and
the inference is, did not undertake to give her full information.

This is the character of the evidence upon which Dr. Warner's sons rely to sustain their burden of proof. Standing by itself it is of doubtful value; and beside is met by positive denial on the part of Mrs. Warner—oath against oath. But assuming that the facts are as stated, the evidence falls short of the measure of required proof. Without knowledge of the " value " of Dr. Warner's estate, which it is admitted was not given, Miss Sands could not make an intelligent decision. If she had lived in the same neighborhood, which she did not, knowledge of the value of his estate would not have been implied: Bierer's Est., 92 Pa. 265. She was not a woman of business experience. She was surrounded by Dr. Warner and his attorneys, and it does not seem to have even been suggested she should have advice of friends. " To say she was bound, when the contract was proposed, to exercise her judgment; that she ought to have taken advantage of the opportunity that existed to obtain information; that if she did not do so it was her own fault, is to suggest what would be revolting to all the better feelings of woman's nature : " Kline v. Kline, 57 Pa. 120. To have selfish and interested motives at such a time cannot be imputed to her. She had a right to assume that her prospective husband would act justly with her. Hence his duty to be frank and unreserved in the disclosure of all the circumstances materially bearing on the contemplated agreement. The duty and responsibility of full disclosure were his ; the evidence fails to show that he made it; and the contract was, therefore, properly set aside upon the presumption of fraudulent concealment.

The exceptions must, therefore, be dismissed.

*Error assigned* was the decree of the court dismissing the exceptions.

*D. F. Patterson*, for appellants.

*J. M. Stoner*, with him *R. T. M. McCready*, for appellee.

PER CURIAM, December 31, 1904:

This judgment is affirmed on the opinion of the learned president judge of the court below.