# Haberman's Estate.

*Husband and wife—Ante-nuptial agreement—Inadequacy of provision—Fraudulent concealment—Presumption—Evidence.*

An ante-nuptial agreement entered into by a man possessed of a seventeen thousand dollar estate with a woman having an estate of thirty-eight hundred dollars and providing that the woman, if the survivor, should have a life estate in two and one-quarter acres of ground with the house thereon, while the man, if the survivor, was to have her whole estate less $130.00, will not be sustained where the evidence fails to show full disclosure to the woman of the value of the man's estate and it appears that the provisions for the wife were inadequate for her maintenance, that the agreement was made at the suggestion of the husband's nephew, that it was not fully explained to the wife who had an inadequate knowledge of English, that it was not understood by her, and that she did not have the advice of any disinterested person in regard to it.

Argued November 1, 1912. Appeal, No. 228, Oct. T., 1912, by Katherine Haberman, Administratrix c. t a., from decree of O. C. Allegheny Co., May T., 1912, No. 174, dismissing exceptions to adjudication in estate of John Haberman, deceased. Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Exceptions to adjudication.

OVER, J., filed the following opinion:

John Haberman died testate December 6, 1910, leaving to survive him a widow, but no issue. The only provision made in his will for his widow is the devise of a life estate in two and a quarter acres of land, upon which he resided, and a legacy of $300.00. She elects to take against the will, and claims that the amount in the hands of the accountant, $2,806.00, be distributed to her under the Act of April 1, 1909.

The legatees under the will offered an ante-nuptial agreement entered into between Mrs. Haberman and

the decedent, August 27, 1889, a few weeks prior to their marriage, by the terms of which she was to have upon his death the life estate given in the will, and if he survived her, he was to have $3,800.00, the whole amount of her estate, less legacies of $130.00, given to her kin. If, then, Mrs. Haberman is bound by this agreement her claim must be rejected.

When the agreement was made she was a widow, aged about fifty years, without children, and the decedent a bachelor, aged sixty-five years. He then owned real estate worth about $10,000 and $7,000 of personalty, consisting of money at interest. The agreement was prepared by a justice, now deceased, who did not understand German, and as Mrs. Haberman understood and spoke English very imperfectly, J. H. Haberman, decedent's nephew, acted as interpreter. He says, "She told me first in German, then I told 'Squire Rodgers in English, after it was down he read it in English, then I read it in German again." Mrs. Haberman says, "I didn't understand half, when he explained anything he always spoke too fast, I could not understand half, it was half English and half German."

That this contract is an unconscionable and unreasonable ante-nuptial agreement there can be no question. Whilst Mrs. Haberman is provided with a house to live in, there is no adequate provision for her maintenance, as it is entirely improbable that she could support herself by renting the two and a quarter acres of land, or by cultivating it herself. As against this inadequate provision for Mrs. Haberman, she covenants to give her husband all her estate, except $130.00 given her kin.

The provisions for her being so grossly disproportionate to the value of her husband's estate, fraudulent concealment will be presumed, and the burden of proof is upon the legatees to show that full disclosure had been made to Mrs. Haberman of the value of his estate: Warner's Est., 210 Pa. 431. This presumption has not been rebutted, as the evidence fails to show that full

disclosure had been made to her of the value of his estate. It does show, however, that the agreement was made at the suggestion of J. H. Haberman, the decedent's nephew; that it was not fully explained to Mrs. Haberman, nor understood by her, and that she did not have the advice of any disinterested person in regard to it, and thus supports the presumption.

Distribution will, therefore, be made to her under the Act of April 1, 1909.

*Error assigned* was decree dismissing exceptions to adjudication.

*J. M. Friedman,* with him *J. D. Buckley,* for appellant, cited: Smith's App., 115 Pa. 319; Ludwig's App., 101 Pa. 535; Neely's App., 124 Pa. 406; Birkbeck's Est., 215 Pa. 323; Robinson's Est., 222 Pa. 113; Yost's Est., 23 Pa. Superior Ct. 183.

*J. W. Kraus,* with him *O. P. Robertson,* for appellee, cited: Warner's Est., 210 Pa. 431; Kline v. Kline, 57 Pa. 120; Kline's Est., 64 Pa. 122; Darlington's App., 86 Pa. 512.

PER CURIAM, January 6, 1913:

The decree of the Orphans' Court is affirmed on the opinion of Judge OVER.

---

## Yoder, Appellant, *v.* Yoder.

*False arrest—Ejection from hotel—Master and servant.*

Where the manager of a hotel having an interest in the profits of the business is ordered by the owner to leave the premises and the manager refuses to go, the owner may eject him by force, if necessary, and if he summons a police officer and orders him to remove the manager without, however, directing the latter's arrest, the manager is not entitled to recover damages from the owner for false arrest.