### Estate of Salmon, Deceased.

450

Argued December 18, 1928.

Before Henderson, Trexler, Keller, Linn, Gawthrop and Cunningham, JJ.

*Maurice Finkelhor,* and with him *Martin, Swaney & Ewing* and *Leonard S. Levin,* for appellant.—In the absence of proof of fraud an ante-nuptial agreement

waiving all rights in spouse's estate cannot be set aside by the survivor: Smith's Appeal, 115 Pa. 319; Tiernan v. Binns, 92 Pa. 248; Haendler's Estate, 81 Pa. Superior Ct. 168; Ludwig's Appeal, 101 Pa. 535; Birkbeck's Estate, 215 Pa. 323; Kline v. Kline, 57 Pa. 120; Greenfield's Estate, 14 Pa. 489.

*Harold F. Reed,* for appellee.—Where the estate of husband and wife at the time of marriage are disproportionate an offer of an ante-nuptial agreement waiving the rights, each in the other's estate, is insufficient, without other testimony, to sustain the burden of proof: Gold v. Scott, 5 Pa. Superior Ct. 262; Bierer's Appeal, 92 Pa. 265.

OPINION BY LINN, J., March 1, 1929:

This case requires the application of the general rule that parties in confidential relation must exercise the utmost good-faith in transactions with each other. The court below set aside an ante-nuptial agreement and allowed the widow's exemption and her election to take against her husband's will. The contest arose at the audit of the executor's account. Appellant in No. 167 is testator's son. Appellant in No. 168 is a legatee. They contend that the widow is barred by her ante-nuptial agreement. The case turns on whether she was imposed on when the agreement was made. It recites their intention to marry, that each "possesses a certain separate and several estate, the value of which is known to the other;" that the intended marriage "shall in no wise affect their relations as now existing with regard to their several and separate estate;" they agree that after marriage each shall use, own and control his or her property as if unmarried, each releasing all claim and right of every kind in the property of the other, and that the same shall descend at death as though the parties had not married. It was acknowledged and delivered Septem-

ber 25, 1912; they were married the same day, he aged 80 and she 55. No monetary consideration passed from him to her and no provision was made for her widowhood. She had come from Russia in 1910, and could not read English; the evidence supports the master in his finding that she could only understand English "to a limited extent." The parties had known each other little more than a month before marriage; they lived together as husband and wife after marriage until testator's death 14 years later, when he left her a legacy of $500 by will dated about a week prior to his death.

It is well settled that parties about to be married stand in confidential relation, requiring the exercise of the utmost good-faith in all transactions between them, and that it is the "duty of each to be frank and unreserved in the disclosure of all circumstances materially bearing on the contemplated agreement," and if the provision secured was unreasonably disproportionate to the means of the intended husband, it raises the presumption of designed concealment and throws the burden of proof on him or those claiming under him: Kline v. Kline, 57 Pa. 120; Neeley's Appeal, 124 Pa. 406; Warner's Estate, 210 Pa. 431; Robinson's Estate, 222 Pa. 113; Haberman's Estate, 239 Pa. 10; where the contract is fairly made it will of course be enforced; see generally, Estate of Christian Slagle, Pa.   , (Nov. 26, 1928), 13 R. C. L. p. 1034.

The auditor held that the widow made out a prima facie case shifting the burden of proof to appellants to show that there was full disclosure to her by the intended husband when the agreement was made. Evidence was accordingly offered to meet the burden. From all the evidence, the auditor concluded that the burden of proof had not been sustained by appellants and found for the widow. On exceptions to the auditor's report, the orphans' court confirmed the report and entered the decree appealed from. The auditor

found that at the time of the marriage the widow was possessed "of about $100 or $200;" that the husband was then possessed of property in a "substantial amount." In his discussion of the evidence the auditor refers to testimony of witnesses on behalf of the widow to the effect that decedent possessed property "of about $10,000 or upwards," and that witnesses called against her estimated his property at about $7,300. It is significant that the accountant, testator's son, who was testator's partner, was not asked to specify all the property testator owned in 1912 or to state its value.

We have then, an agreement which recites facts found by the auditor not to exist; which makes no provision of any kind for the widow, an agreement executed in circumstances, as the auditor found, which required a disclosure of decedent's property which was not made; as there is evidence to support the findings of the auditor, approved by the court, we may not interfere with them: Estate of Christian Slagle, supra.

No. 167, order affirmed, costs to be paid by the estate.

No. 168, order affirmed, costs to be paid by the estate.