## Clark's Estate.

Argued March 18, 1931. Before FRAZER, C. J., WALL-
ING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*Maynard Teall,* with him *Edwin W. Smith,* of *Reed,
Smith, Shaw & McClay,* and *John B. Nicklas, Jr.,* for ap-

pellant.—An antenuptial agreement is invalid when signed immediately before the marriage ceremony, without previous consideration by the wife or advice of counsel, without disclosure of the husband's estate, and with small benefit to the wife as compared to her dower right relinquished: Kline v. Kline, 57 Pa. 120; Mishey's App., 107 Pa. 611; Yardley v. Cuthburtson, 108 Pa. 395; Greenfield's Est., 14 Pa. 489; Warner's Est., 210 Pa. 431; Shea's App., 121 Pa. 302; Mauk's Est., 19 Pa. Superior Ct. 338; Haberman's Est., 239 Pa. 10; Salmon's Est., 95 Pa. Superior Ct. 449; Bierer's App., 92 Pa. 265.

When such agreement gives the wife one-eighth, defining one-eighth as the same share as would be received by each of the husband's children on his decease intestate, he having seven children at date of the agreement, the wife is entitled to one-sixth at her husband's death, two of the husband's children having predeceased him without issue.

Gifts by the husband to his children in his lifetime, aggregating about $125,000, or over one-fourth of the estate, should be considered similar to advancements to the extent of being added back to the estate before computation of the widow's portion under the agreement: Lantz v. Frey, 14 Pa. 201.

*Miles H. England,* with him *Smith, Buchanan, Scott & Gordon,* for appellee.—The antenuptial agreement was properly sustained by the court below: Warner's Est., 210 Pa. 431; Culbertson's Est., 301 Pa. 438; Neely's App., 124 Pa. 406; Kesler's Est., 143 Pa. 386; Smith's App., 115 Pa. 319; Ludwig's App., 101 Pa. 535; Robinson's Est., 222 Pa. 113; Whitmer's Est., 224 Pa. 413; Kline v. Kline, 57 Pa. 120.

The court below properly awarded the widow one-eighth of the decedent's estate and not some other fraction.

The court below properly disposed of the question of the gifts made by the decedent in his lifetime.

OPINION BY MR. JUSTICE SIMPSON, April 20, 1931:

Appellant, who is the widow of testator, elected to take against his will. The court below struck off the election, because of an antenuptial agreement entered into by the parties on the day of their marriage. This agreement was held valid, and, from the decree of distribution made in accordance with its terms, the present appeal was taken.

The agreement provides that each of the parties to it "shall have, hold and possess only such property rights as are created and agreed upon under this antenuptial settlement; that is to say" if he dies first she "shall inherit and receive the undivided one-eighth part of the estate of the said H. H. Clark absolutely, it being the true intent and meaning hereof that she, the said Ida P. Graham, shall, in such event, receive the same share or portion of the estate of the said H. H. Clark as would be received by each of the children of H. H. Clark in the event of his death intestate, he, the said Clark, at this time having seven children; and the said Ida P. Graham does hereby forever remise, release and quitclaim all right, title and interest which she might or otherwise could have in and to the personal or real estate of the said H. H. Clark as his widow under the intestate laws of Pennsylvania, and does hereby agree to accept and receive the share of said estate hereinabove mentioned, to wit, the undivided one-eighth part thereof, in full settlement of all such claims and demands as she might or otherwise could have as widow of the said H. H. Clark in the event of his death."

In determining the validity and scope of the agreement, the following facts,—which were found by the court below upon ample evidence and hence are accepted as true (Phillips's Est., 295 Pa. 349; Husted v. Parts Engineering Co., 296 Pa. 376),—are pertinent to the issue: Appellant and testator had each been previously married, but not to each other. At the time of the execution of the agreement he was sixty-four years old

and had seven children; she was thirty-four years old
and had two minor children. He had an estate of some
$450,000; she had no estate, but was an employee of
his, taking care of his office, receiving therefor $30 a
month and the lodging of herself and children in his
house. At times, one of her children had to work to
eke out the family income. The agreement was pre-
pared by testator's lawyer and was executed at the office
of the latter, to which testator took her immediately be-
fore the marriage. Appellant knew she was going to the
lawyer's office to execute that kind of an agreement, but
whether or not it was read to her is a matter in dispute.
The weight of the oral evidence would seem to be that it
was not, for she told decedent that whatever he did in
regard to the matter would be satisfactory to her. She
knew he was well-to-do, but did not know the value of
his estate. She did not have, or seek to have, an oppor-
tunity to consult counsel or friends, nor did she ever
thereafter seek further information or advice regarding
the matter. She was told that the agreement gave to
her an equal share with his seven children, but exactly
what that would be she did not ask, was not told, and
did not know. He was not guilty of fraud or overreach-
ing in the matter, and it does not appear that he con-
cealed or attempted to conceal anything from her. The
agreement says: "Both parties hereby certify and de-
clare that they are fully cognizant of the force and effect
of this contract, and that the same has been entered into
after they had become fully acquainted with the respec-
tive estates of the parties." Giving to this statement
full effect, however, it does not preclude inquiry, by a
court of equity, into the adequacy of the consideration,
for it does not assert that appellant knew the value of
decedent's estate, and this is essential in order to close
the door upon such an inquiry: Warner's Est., 210 Pa.
431, 434.

They lived together happily and comfortably, but,
considering the amount of his estate, somewhat economi-

cally, for twenty-one years after the marriage, until he died. During much of this time appellant's children lived with them, and were supported and educated by him. During it, he made large gifts to his children, and gave smaller but substantial amounts to appellant and her children. All of these gifts were made from the accruing income of his estate, which continued substantially unchanged from the time of their marriage until his death. No child was born to them. Two of his seven children predeceased him, leaving no descendants.

Appellant not having been informed as to the value of testator's estate, at the time the agreement was executed, "the law appears to be that if the provision by the husband for his future wife was unreasonably disproportionate to his means, it raises the presumption of designed concealment, and throws the burden upon [those alleging the validity of the agreement] to show that it was fair": Neely's App., 124 Pa. 406, 425. Unless this burden is successfully carried, "equity will treat the transaction as one of constructive fraud and set it aside": Kline's Est., 64 Pa. 122, 124; Tiernan v. Binns, 92 Pa. 248, 252; Bierer's App., 92 Pa. 265; Shea's App., 121 Pa. 302, 310.

Without quoting from the cases at length, it suffices to say that the true test, as to the adequacy of the provision in favor of the intended wife, is whether or not it is sufficient to enable her to live comfortably, after his death, in the same way as, considering all the circumstances, she had previously lived. In addition to the cases hereinbefore cited, upon this point, see Warner's Est., 207 Pa. 580; Whitmer's Est., 224 Pa. 413, and Haberman's Est., 239 Pa. 10, in the first and last of which the agreement was held void because it did not provide for an adequate support of the widow after her husband's death.

Applying that test in the instant case, we cannot say the court below erred in sustaining the adequacy of the consideration specified in the present agreement. Un-

der it, appellant will receive in the neighborhood of $53,000 absolutely. This will net her, at five per cent interest, $2,650 a year, with which she should be able to support herself much better than she was able to do on $30 a month and lodging before her marriage, and quite as well as she and testator did "economically" during their married life. In addition, the principal of $53,000 would remain unimpaired.

Appellant further contends that, because two of testator's seven children predeceased him, without leaving descendants, she should be given one-sixth of his estate, and not one-eighth as was awarded by the court below. Much could be said in favor of this contention if the first reference to the proportion stood alone. It is there said that, if he dies first, she "shall inherit and receive one-eighth part of the estate......it being the true intent and meaning hereof that she [shall] receive the same share......as would be received by each of the children,......[he] at this time having seven children." The words "at this time" tend to support such an argument. That clause does not stand alone, however. It is later said that she "does hereby agree to accept and receive the share of said estate hereinabove mentioned, to wit, the undivided one-eighth part thereof, in full settlement." This clear language resolves any ambiguity which might arise under the first clause.

Appellant's final contention is that, since testator, after their marriage, made large gifts to his children, his so doing should be treated as an advancement to them, or as in fraud of her rights under the contract. We agree with the court below that the contention wholly fails, since the principal of his estate was not impaired by reason of these gifts. He probably had an annual income of $20,000 to $25,000, lived economically, as appellant asserts, and could readily have made all the gifts referred to out of his surplus income. There is no evidence that they were not so made, and hence, as appellant had the burden of proving the fact of advance-

ment or fraud, it must be held that this contention fails for want of the necessary proof to enable it to be considered.

The decree of the court below is affirmed and the appeal is dismissed, the costs to be paid by the estate of testator.