## Flannery's Estate.

Argued May 22, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and LINN, JJ.

*W. J. Fitzgerald,* of *Kelly, Balentine, Fitzgerald & Kelly,* for appellants.

*Russell J. O'Malley,* with him *Gerard W. O'Malley,* both of *O'Malley & O'Malley,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, June 30, 1934:

Ella Flannery, widow of John Flannery, filed her petition in the court below, asking partition of the real estate of her deceased husband, who died intestate. In denial of her right, appellants, children of deceased by a former marriage, set up an antenuptial agreement executed by the widow and their father, in which each released all right to the other's property. To this, reply is made by her that the agreement is invalid, as no disclosure is shown to have been made by the decedent to her of the value of his property when she signed the contract. The record discloses no such information. When the agreement was signed, the husband possessed real estate of the value of about $69,000; the wife had nothing.

The agreement was prepared by a member of the Lackawanna County Bar. So long an interval had

elapsed between the time of its preparation and the hearing in the court below that he had no recollection of anything connected with it, except that the agreement was in fact entered into and acknowledged before him.

At the time of their marriage each of the parties was about fifty-five years of age. The marriage was kept secret for some time. After its announcement, the husband took his wife to his home where he resided with his grown children. Discord and lack of harmony arose between her and them. After living in the house for three days, she departed and went to her father's home where she had formerly resided, which was across the street from that of her husband. There he visited her for the ensuing thirteen years until his last illness. The relations between the couple during all this time were friendly and affectionate. The husband contributed to her support.

While no evidence was produced showing that the husband had made any disclosure to his wife of the value of his property, it is argued by appellants that as she lived in the neighborhood in which he resided and in which the eleven pieces of real estate which he owned were located, she must have known of the property which he possessed and its value, and a disclosure was not necessary. It is also argued that the widow is guilty of laches, because she took no steps to set aside the antenuptial agreement until almost fourteen years after it was entered into and until her husband was in his last illness, which prevented any hearing before his death.

As to this last contention, it is sufficient to say that it would take a very strong case, much stronger than the one here shown, to lead to a holding that the wife was guilty of laches in not promptly moving to set aside an antenuptial agreement, particularly in cases such as this, where it appears that the relations between the parties continued to be intimate and affectionate. The law frowns upon litigation between husband and wife. Where their relations are friendly and affectionate, it

takes account of the fact that she would be loath to institute legal proceedings against him. In Morrish v. Morrish, 262 Pa. 192, we said at page 201: "......owing to the social importance of maintaining the family relation, in suits between a wife and her husband for the protection of the former's property, statutes of limitation, as also presumptions or estoppels by lapse of time do not ordinarily affect the rights of the wife, since she cannot be expected to treat her husband as a stranger; as certain courts have well said, any other policy would be apt to beget disagreements and contentions in the family fatal to domestic peace."

In our opinion, appellants' argument that decedent, because the appellee lived in the neighborhood where his properties were located, was absolved from disclosing to his wife the value of his possessions, cannot prevail. It might well be that a woman could live in the same neighborhood with a man and not know what real estate he possessed, and, even if she did know that he owned real estate, have no idea of its value. This woman married the deceased two years after the death of his first wife, and, presumptively, until he proposed marriage to her, would have no interest in his affairs or his possessions. Just who owns neighborhood properties or their value is of little concern to most of us. It was incumbent on him before he could in fairness ask her as his prospective wife to waive all right in his property to make full disclosure to her. This is the import of all our cases and is a wise and salutary rule. We said in Kline v. Kline, 57 Pa. 120, 122: "Surely when a man and woman are on the eve of marriage, and it is proposed between them, as in this instance, to enter into an antenuptial contract upon the subject of 'the enjoyment and disposition of their respective estates,' it is the duty of each to be frank and unreserved in the disclosure of all circumstances materially bearing on the contemplated agreement."

For their validity antenuptial contracts depend upon the presence of one of two factors: A reasonable provision for the wife, or, in the absence of such provision, a full and fair disclosure to the wife of the husband's worth. This was pointed out in Warner's Est., 210 Pa. 431. It was also said in that case that where the provision made for the wife is grossly disproportionate to the value of the husband's estate, fraudulent concealment will be presumed and the burden of proof thrown on him to show that full disclosure had been made. Here, there was no provision and no disclosure.

Bierer's Appeal, 92 Pa. 265, is very closely related to the pending case. There, the husband was worth about $60,000, and the woman had nothing. The antenuptial agreement contained mutual releases of each other's property. A five dollar provision was made for the wife. We there said, page 266: "This paltry sum of five dollars was manifestly so unreasonable and disproportionate to the value of his property, as to raise the presumption that he designedly concealed from her the value thereof. That presumption was not rebutted by any specific or satisfactory evidence. It is true, the auditor found that they had lived in the same neighborhood for many years, the circumstances of each one, to some extent, known to the other. This general information is insufficient to prove she had knowledge, approximating to correctness, of the value of his property. In the absence of any evidence showing he made a statement to her of any sum that he was worth, we cannot presume she would have accepted that nominal sum, had she been fully and truthfully informed. It was not, therefore, such a contract as should move a court of equity to decree its specific performance." In Clark's Est., 303 Pa. 538, we reiterated what had been said in earlier cases that if the provision made by a man for his intended wife, in an antenuptial agreement, is unreasonably disproportionate to his means, it raises a presumption of designed concealment, and throws the burden upon those

who claim that the agreement was fair and conscionable. Unless this burden is carried, equity will treat the transaction as one of constructive fraud and set it aside.

Appellants argue that a different rule is to be applied in cases where older people marry than where younger ones do. This is referred to in Neely's Appeal, 124 Pa. 406, but in that case the intended wife had an estate of her own valued at $12,000, which the husband released, and he provided in the contract that his wife should be paid an annuity of $600. By his will he gave her a furnished home for life. In Birkbeck's Est., 215 Pa. 323, under the provisions of the contract the husband released all claim to his intended wife's estate and she released all interest in his, saving only such testamentary provisions as he should thereafter make in her behalf. By his will he gave her $100,000, more than half of his estate. In Whitmer's Est., 224 Pa. 413, the wife had knowledge of the value of the husband's estate and he made provision for her after his death.

The case was properly decided by the learned President Judge of the court below. Its order awarding the inquest in partition is affirmed at appellants' cost.