## Groff's Estate.

106

Argued January 21, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Paul A. Mueller,* of *Windolph & Mueller,* with him, *Alfred C. Alspach,* for appellant.

*Bernard J. Myers,* of *Zimmerman, Myers & Kready,* with him *John E. Malone,* for appellees.

OPINION BY MR. JUSTICE PATTERSON, March 24, 1941:

This appeal is from a decree of the court below striking off the election of Ida B. F. Groff to take against the will of her deceased husband, Fred F. Groff, because of an antenuptial agreement executed by her and the testator on the day of their marriage.

Fred F. Groff died testate on February 28, 1938, leaving to survive him his widow, and a son and daughter by a former marriage. The widow, on April 8, 1938, elected to take against the will, whereupon, on September 22, 1938, the executors and the son and daughter, as legatees under the will, filed a petition asking that the widow's election be stricken off upon the ground that it was in contravention of the express terms of an antenuptial agreement entered into by the widow and testator, dated September 2, 1933, the day of their marriage. An answer was filed by the widow admitting the execu-

tion of the agreement, but averring that testator fraudulently procured her signature thereto by misrepresenting and concealing his then true status and worth, to which answer a replication was filed. After hearing, the court below entered a decree striking off the election, to which action the widow filed exceptions. Her exceptions having been dismissed, the widow has taken this appeal.

By his will, dated October 1, 1933, testator made provision for appellant, as follows: "I give and bequeath to my Executors, as Testamentary Trustees, and the survivor of them, the sum of Fifty Thousand Dollars ($50,000), free of transfer inheritance taxes, the net income of which, from the date of my death, shall be paid semi-annually to my wife, Ida B. F. Groff, for and during the term of her natural life and so long as she remains my widow and, upon her remarriage or decease, the said trust shall terminate and there shall first be paid out of said principal sum the funeral expenses of my said wife and the balance of principal then remaining, as well as any interest or income accruing thereon, after the termination of the trust, shall be distributed as part of my residuary estate." The provision thus made by testator for appellant is strictly in accordance with the antenuptial agreement of September 2, 1933, wherein appellant agreed, inter alia, that upon the decease of testator she would "take and accept the income of the said trust fund of Fifty Thousand Dollars ($50,000), as well as the provision for the payment of her funeral expenses out of the principal thereof, in full satisfaction of all other rights, interests, claims, shares or allowances in law or in equity of his estate, real and personal, which she might or could have or be entitled to under the laws of the Commonwealth of Pennsylvania, or otherwise, as the widow of [testator], except for the execution of this agreement."

The agreement recites that it is entered into in contemplation of a marriage "intended to be solemnized between the said parties" and expressly declares that it is

entered into for the purpose "of limiting and modifying the interest which each might be entitled to receive in the estate of the other, and that such interests shall be other than those which are now or may hereafter be governed by the laws of the Commonwealth of Pennsylvania or the domicile where the said parties may reside at the time of their decease"; also that it "is entered into by the parties hereto with full knowledge on the part of each of the extent and probable value of all of the property, or estate, of the other, and of all the rights that, but for this agreement, would be conferred by law upon each, in the property or estate of the other, by virtue of the consummation of the said proposed marriage; and it is the express intention and desire of the parties hereto that their respective rights in and to each other's property or estate, of whatsoever character the same may be, shall be determined and fixed by this agreement, and not otherwise."

The evidence shows that on August 28, 1933, testator, who lived in Lancaster, Pennsylvania, and appellant, his then prospective bride, who lived in Bedford, Pennsylvania, together went to the office of Frank E. Colvin, a reputable member of the Bedford County Bar and an intimate friend of appellant's family for many years, with the agreement already prepared, stating that "these were the terms agreed upon" and asking him "to go over this and see whether this agreement would protect both parties under the understanding which they had reached." Neither at this meeting nor on September 2, 1933, when the agreement was executed and acknowledged in his presence, was anything said to the attorney as to the size or value of the estate of either appellant or testator, and the adequacy of the provision for appellant was not questioned. Appellant, who undoubtedly knew the testator was a man of considerable means, was apparently satisfied with the provision made for her and only sought assurance that he would be bound to carry out the arrangement. During their marriage neither of

the parties took any steps to revoke or rescind the agreement, and it does not appear that appellant ever questioned the adequacy of the provision made for her at any time during the four and one-half years they lived together as husband and wife. These circumstances under which the antenuptial agreement was executed are important, for they negative the charge of fraud and concealment.

Appellees proved only the antenuptial contract, which they offered in evidence, and, at the close of appellant's evidence, which related almost entirely to the value of testator's estate as of the date of the agreement, without offering any rebuttal evidence, filed a motion which was sustained by the court, after argument, to strike off appellant's election. Appellant admits the execution of the antenuptial agreement but contends, in substance, that the provision for her appears so manifestly unreasonable, in view of evidence introduced by her tending to show that at the time of the execution of the agreement testator was possessed of a gross estate of approximately $314,000, as to give rise to a presumption of fraudulent concealment which it was incumbent upon the proponents of the agreement to rebut, if they were to prevail, by showing that the disproportion between the provision for her and testator's estate at the time of the agreement, thus made to appear, did not in fact exist, or that a full disclosure of his then financial status was made by testator at the time the agreement was entered into.

As this Court has, on many occasions, pointed out, the relation of prospective spouses is one of extreme mutual confidence, requiring the exercise of the utmost good faith in all transactions between them, and when they enter into an antenuptial agreement determining property rights, a duty arises having no place in the ordinary contractual relationship to be frank and unreserved in the disclosure of all circumstances materially bearing upon the contemplated agreement. While such an agree-

ment will not be invalidated by reason of the mere fact that the wife does not receive as much as she would be legally entitled to receive in the absence of the agreement, since the only purpose of such contracts is to change the provision the law makes for her, it must be taken to be well settled that where no provision is made for the wife, or the provision made for her is unreasonably disproportionate to the then means of the intended husband, it raises a presumption of designed concealment and throws the burden on those alleging the validity of the agreement to show that it was fairly made: *Flannery's Estate*, 315 Pa. 576; *Clark's Estate*, 303 Pa. 538; *Warner's Estate*, 210 Pa. 431. However, it is equally well settled that "When we consider the adequacy of the provision we must regard all the circumstances surrounding the case" (*Neely's Appeal*, 124 Pa. 406, 426), for, as was said in *McCready's Estate*, 316 Pa. 246, 253: "In some respects, every contest in this class of agreements is unique. In each, all of the relevant facts must be grouped together, and, when considered in bulk, the court must determine whether or not the party objecting has a just right to complain." "The true test of the adequacy of the consideration in an antenuptial agreement," it was stated in *Clark's Estate*, supra, 543, and again in *McCready Estate*, supra, 255, "is whether the provision for the intended wife is sufficient to enable her to live comfortably after [the husband's] death, in substantially the same way as, considering all the circumstances, she had previously lived."

Testator and appellant were both past middle life at the time the antenuptial agreement was executed. Each had been previously married, he being a widower with a grown son and daughter, both of whom survive him, and she being a widow and mother of a child by her first husband. Appellant possessed little or no estate of her own, as compared with testator's estate, having received but $6,500 to $7,000 from the estate of her former husband, and this in 1929, several years before her

marriage of less than five years' duration to testator. Considered in the light of these and other facts disclosed by the record, relevant in determining the adequacy of the provision for her, we are of one mind that it cannot be affirmed the provision for appellant of the income of $50,000 for life and funeral expenses is manifestly unreasonable and disproportionate to the testator's means at the time of the agreement and, therefore, that under all the circumstances present no presumption of fraud or designed concealment could arise. Cf. *Smith's Appeal*, 115 Pa. 319; *Neely's Estate*, 124 Pa. 406; *Clark's Estate*, 303 Pa. 538. As was said in *McCready's Estate*, supra, quoting from *Neely's Estate*, also supra: "There is a marked distinction between [a case like the present] and that of a young couple just entering upon the voyage of life. In the latter instance, they grow up together; the wife is the mother of [the husband's] children; she shares his burdens in his early struggles, and often by her thrift and economy materially aids him in the accumulation of his fortune. To cut off such a wife with a mere support during her life would be as unjust as it would be ungenerous. But [under circumstances like those here presented] it is very different. In such case the wife reaps where she has not sown, and, if she is provided with a comfortable support after her husband's death, she has no just cause of complaint."

There is no occasion to consider the legal effect of appellant's unexplained solemn declaration and admission, as part and parcel of the antenuptial contract which she now seeks to have set aside on the ground of fraudulent concealment, that she entered into it with full knowledge of the extent and probable value of testator's then estate,* for, in view of our conclusion that the provision

---

* In *McCready's Estate*, 316 Pa. 246, not referred to by appellant, this Court said, at 252, in considering the legal effect of such a provision, contained in an antenuptial agreement executed under circumstances strikingly similar to those attendant upon the execution of the present agreement: "If, then, knowing the meaning

for her was not manifestly inadequate, the failure of testator to make full and complete disclosure of his financial worth would be of no consequence. As was said in *Flannery's Estate*, supra, at 580: "For their validity antenuptial contracts depend upon the presence of *one* of two factors: A reasonable provision for the wife, *or*, in the absence of such provision, a full and fair disclosure to the wife of the husband's worth." "An antenuptial agreement will not be declared invalid, even if full information is not given to the wife of the husband's estate, providing that there is a reasonable allowance made for her": *Gorback's Estate*, 96 Pa. Superior Ct. 527, 529.

Decree affirmed at appellant's cost.

---

of the words in the agreement, [appellant] none the less signed and delivered it, and, on the faith of his so doing, testatrix married him, he cannot now be heard to contend, after she is dead, that she married him in the belief that he did not waive the right to claim, in case she predeceased him, in antagonism to her testamentary provisions. This conclusion is alone sufficient to require a dismissal of the present appeal." The Court stated further, at 255, that "Appellant's signature to the agreement, which stated that he knew its contents, is affirmative proof that he was not deceived when he signed it," citing, with approval, *Smith's Appeal*, 115 Pa. 319, 321, where the following appears: "The solemn admission of the widow, that the testator had apprised her of the value of his estate, which appeared in the deed, may be used in two ways; it either throws upon her the burden of showing that she had been deceived; or if the *onus* is with the accountants, it is affirmative proof in their hands that she was not deceived." See also *Clark's Estate*, 303 Pa. 538, 542, where it was said with respect to a provision that "Both parties hereby certify and declare that they are fully cognizant of the force and effect of this contract, and that the same has been entered into after they had become fully acquainted with the respective estates of the parties," that "Giving to this statement full effect, however, it does not preclude inquiry, by a court of equity, into the adequacy of the consideration, *for* it does not assert that appellant knew the value of decedent's estate, and this is essential in order to close the door upon such an inquiry." Cf. *Warner's Estate*, 210 Pa. 431; *Salmon's Estate*, 95 Pa. Superior Ct. 449.