## McCurdy's Estate

*Harry J. Alker, Jr.*, for accountants.

*J. Ambler Williams* and *Allen C. Thomas*, for surviving spouse.

*J. Knox Fornance*, for claimant.

*Maxwell Strawbridge*, guardian and trustee ad litem, p. p.

HOLLAND, P. J., September 28, 1943. — Decedent died on September 29, 1940, leaving a will dated January 25, 1938, and two codicils dated December 20, 1938, and September 20, 1940. In his will he gave his personal effects and household furniture to his daughter, absolutely; and the residue in trust for his daughter, for life, then to her children, for their lives, with remainders over. In the first codicil, decedent directed his trustees to pay first out of the income from his residuary estate $1,200 per year to his wife, Cora V. McCurdy, for life or until her remarriage.

The account was filed on October 1, 1941, and a supplemental account was filed at the audit, showing a balance of $46,400.11, and a balance of income, personalty, of $3,464.44.

There are several questions to be adjudicated. A hearing was had and testimony was taken at the audit on March 26, 1943. The audit of the account was not completed until the petition for adjudication was filed during vacation. At that time the court was also advised that a stipulation of further facts, which counsel had agreed at the hearing to file thereafter, would be omitted. There has been no oral argument and no briefs have been filed.

The first question to be taken up is the determination of the interest of decedent's widow in his estate. That depends upon the effect of an antenuptial agreement and an election to take against the will.

Decedent's first wife died in 1932. By her he had one child, a daughter. She and her husband are the

individual accountants here. Cora V. Morris and decedent had been acquainted for some years prior to 1938. She was a speculator in real estate. Decedent's business activities were limited to his duties as sole surviving trustee under the will of his father, John K. McCurdy, deceased, of a fund in excess of $1,000,000. Decedent maintained an office for that estate in Philadelphia, which the present Mrs. McCurdy visited occasionally to place mortgages in connection with her real estate transactions. Her business being then unsuccessful, she gave it up in 1932. Thereafter she devoted herself to caring for her invalid mother, who died in 1937. She lived in her own home of 30 years' standing in Wissahickon, Philadelphia.

In September 1938, decedent and the then Cora V. Morris arranged to become married. Toward the end of that month decedent called on his attorney, Mr. Alker, stating that he was to be married, but not to whom. Decedent wanted an antenuptial agreement prepared with the name of the other party left blank. Mr. Alker prepared such an agreement in duplicate and delivered it to decedent. On October 6, 1938, decedent, his fiancée, and Mr. Alker met in the office of the clerk of this court by appointment, so that Mr. Alker could assist in obtaining the marriage license. Until then, Mr. Alker had never met decedent's fiancée and did not know her identity. Before applying for the license decedent produced the antenuptial agreement prepared for him by Mr. Alker for execution. Mr. Alker then asked both parties "if they had disclosed to one another what they were worth, and Mr. McCurdy said he had told her already that he was worth between fifty and sixty thousand dollars. . . . She said she could not tell what she was worth, she had a lot of real estate and a lot of debts."

The agreement was then executed by both parties, the signatures being witnessed by Mr. Alker and by a clerk in the register of wills' office. It recites the in-

tended marriage, that each party owns a separate estate in personal and real property, and their desire that the marriage shall not affect existing relations in their separate estates. It then stipulates that after marriage each party shall continue to own and control his and her separate property as though unmarried, each relinquishing all rights in the separate estate of the other, and that on the death of either the separate estate of the deceased shall descend to his or her heirs, legatees, or devisees.

On October 15, 1938, the parties were married in Mrs. McCurdy's home.

On March 28, 1941, Mrs. McCurdy executed an instrument prepared by her attorneys, wherein she set forth that she elected to take against decedent's will. This instrument was recorded in the office for the recording of deeds of this county on March 29, 1941. On March 31, 1941, Mr. Thomas sent a copy to Mr. Alker, with a letter stating that the original had been filed "in the Register of Wills Office Saturday last". After having been recorded, the original election remained continuously in the possession of Mrs. McCurdy or her counsel, and it was produced at the hearing and offered in evidence. It was not filed with the clerk of this court.

Unless this instrument is effective as an election to take against the will, there is no necessity to inquire into the validity of the antenuptial agreement. Even though the latter might be found to be no obstacle to the widow's claim of an interest in her husband's estate, she can make that claim only by an election to take against the will or be bound by the statutory presumption to take under it.

The formalities of an election by a surviving spouse are specified in detail in section 23 (b) of the Wills Act of June 7, 1917, P. L. 403, as amended by the Act of July 8, 1935, P. L. 611. Required are a writing signed by the spouse and duly acknowledged, and delivery to the executor or administrator within one year of the

grant of letters. That is all the spouse need do. The personal representative is required by section 23 (e) of the Wills Act, supra, to record the election and thereafter file it in the office of the clerk of the orphans' court, at the expense of the estate.

There have been many cases arising out of the failure of the surviving spouse, or of the personal representative, or of both, to comply with these requirements. Our appellate courts have said repeatedly that the provisions of the Wills Act, supra, and of its predecessor are mandatory and must be followed: Broad's Estate, 325 Pa. 541, 544 (1937) ; Dalsen's Estate, 310 Pa. 190, 193 (1933) ; Daub's Estate, 305 Pa. 446, 453 (1931) ; Cramm's Estate, 127 Pa. Superior Ct. 446, 450 (1937), affirmed per curiam, 329 Pa. 528 (1938). The surviving spouse's duties are discharged by signing the writing, acknowledging it, and delivering it to the executor or administrator. If the latter then fails to do his duty and record and file the election, the spouse is protected. This court so held in King's Estate, 50 Montg. 306 (1934), 22 D. & C. 172 (1934), which was cited with approval by the Superior Court in Cramm's Estate, supra.

In Dalsen's Estate, supra, the election was duly executed and acknowledged. Then, instead of being filed with the executor, it was recorded and filed with the clerk of the orphans' court on behalf of the surviving spouse, a copy being sent to the executor. The validity of the election was attacked by residuary legatees, because of the failure to file with the executor, but was sustained. It was held that there had been a substantial compliance with the act in the light of its purpose. The court said (p. 195) :

"The election must be duly executed, acknowledged, recorded in recorder's office, properly indexed, *and filed with the clerk of the orphans' court, where it may be placed among the papers of the estate. These steps are imperative.*" (Italics supplied.)

No case goes further in overlooking failure to comply with form, where substance is present in its place. The fourth step, filing with the clerk, is not merely a matter of form, but an "imperative" requirement. Mrs. McCurdy's failure to take that step invalidates her election.

Even though the election were sustainable, and the decision dependent upon the merits of the antenuptial agreement, the result would be the same.

"For their validity antenuptial contracts depend upon the presence of one of two factors: A reasonable provision for the wife, or, in the absence of such provision, a full and fair disclosure to the wife of the husband's worth": Flannery's Estate, 315 Pa. 576, 580 (1934); accord, Groff's Estate, 341 Pa. 105, 112 (1941). Here the first alternative is out, for there was no provision whatsoever for the wife. Was there a sufficient disclosure?

Mrs. McCurdy's testimony of discussions with her husband was incompetent and the objection thereto should have been sustained: Ray's Estate, 304 Pa. 421 (1931). That leaves only Mr. Alker's testimony as already recited above. Although Mrs. McCurdy was called in rebuttal and denied the facts he stated, there is no reason to disbelieve Mr. Alker. It would be extraordinary for a lawyer about to supervise the execution of an antenuptial agreement, which he had prepared, and having both parties together before him for the first time, not to make certain of a fact so important that its absence would nullify his work. Some measure of corroboration for this finding can be derived from the evidence of decedent's son-in-law. He testified that, a few hours after the wedding, Mrs. McCurdy asked him if it were true, as Mr. McCurdy had told her, "that he was worth between fifty and sixty thousand dollars, and I said, 'Yes, I think that is about right'." Of course, it is possible that Mrs. McCurdy might not have known or been told that before signing the agreement, and

that she learned it in the nine-day interval between that date and the date of the wedding. Yet in her rebuttal testimony she neither denied nor thus explained this evidence.

If the decision were rested upon the merits of the antenuptial agreement, it would have to be sustained on a finding of full and fair disclosure.

The second question to be determined arises out of 18 exceptions to the account filed by Mrs. McCurdy. A number of these were withdrawn at the audit. Others were explained by accountant to the apparent satisfaction of exceptant. The remaining ones were to various disbursements for which accountants claim credit, the descriptions of the items leaving room for possible doubt as to their propriety. The suggestion was made by the auditing judge that counsel for exceptant confer with an official of the corporate co-executor, and if still unsatisfied thereafter apply for a further hearing. No such application having been made in the six months since the audit, we presume that satisfactory explanations were received and that these exceptions are not pressed. The exceptions not actually withdrawn of record are therefore dismissed.

The third and last question is raised by the claim of Francis L. Plumy, surviving trustee under the will of George F. Lasher, deceased. This claim is for the amount of a verdict entered in an action in assumpsit brought in the court of common pleas of this county as of February term, 1942, no. 195, by claimant against Mrs. McCurdy. The verdict was taken by agreement on January 18, 1943, and on January 23, 1943, judgment was entered thereon in judgment docket Q-5, p. 483, as of November term, 1942, no. 277, for $218.38, the amount of the verdict and costs.

Through financial difficulties prior to her marriage Mrs. McCurdy lost title to her home, which became the property of claimant. Mrs. McCurdy continued to reside in the property under a rental arrangement with

·claimant. The suit was brough for the balance of rent in arrears up to the time when Mrs. McCurdy vacated the property.

It is contended that decedent assumed his wife's liability for this debt by promises made to her before their marriage. There is no evidence that decedent made any promise of any kind to claimant or that he ever had any dealings or negotiations with him. The most claimant was able to show, and by evidence less than the best, is that once decedent gave Mrs. McCurdy a check for $100 to be applied by her on account of her indebtedness. The burden of proving that decedent assumed the debt has not been met, therefore the claim is dismissed.

Maxwell Strawbridge, Esq., was appointed by this court guardian ad litem for any minors interested in the estate and trustee for any unborn and unascertained interests in the estate. He appeared at the audit and in opposing the claims presented took part in the examination of witnesses.

He stated that he approved the account as filed and the accountants' suggestion as contained in the petition for adjudication.

For his services as guardian ad litem and trustee ad litem as aforesaid there is awarded to Maxwell Strawbridge, Esq., a fee of $1,000, payable out of principal.

Girard Trust Company has renounced its right to act as trustee. Its renunciation in writing was offered in evidence at the audit and is hereto attached.

The payment of $1,410.80 on account of transfer inheritance tax was duly vouched. The residue hereinafter awarded to the remaining testamentary trustee is expressly subject to the payment of any further transfer inheritance tax that may be found to be due, and the payment of said tax will be reflected in the schedule of distribution hereinafter directed to be prepared.

The balances for distribution as shown by the supplemental account, subject to distribution already prop-

erly made, are awarded as suggested under the last paragraph of the petition for adjudication, and in conformity with the decisions rendered in this adjudication.

The account and supplemental account are confirmed, and it is ordered and decreed that Girard Trust Company, Belle Louise McCurdy Graham, and George J. Graham, executors as aforesaid, forthwith pay the distributions herein awarded.

Counsel for accountants shall file a schedule of distribution in duplicate.

And now, September 28, 1943, this adjudication is confirmed nisi.