## Gelb Estate

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Ostroff & Lawler,* for exceptants.

*Saul, Ewing, Remick & Saul,* contra.

*Michael Goldman,* for a minor beneficiary.

*Edward G. Bauer, Jr.,* City Solicitor, *Albert J. Persichetti,* Deputy City Solicitor, and *Joseph W. Marshall, Jr.,* for School District of Philadelphia.

*Albert Bartolomeo,* for Commonwealth.

LEFEVER, J., February 18, 1966.—In March, 1960, Edward M. Gelb, deceased, and claimant, Fannie Bazrod, consulted Harry B. Berk, Esq., about an antenup-

tial agreement. Thereafter, Mr. Berk drew the agreement. On March 24, 1960, they executed the agreement in Mr. Berk's office. They were married on March 27, 1960. They lived together harmoniously as husband and wife in the home owned by claimant at 6702 North Eighth Street, Philadelphia, until June 6, 1963, when decedent died. Decedent's will left nothing to claimant. She filed an election to take against the will. Exceptants filed a petition to vacate the election.

After extensive hearings, Judge Shoyer found as a fact that decedent fraudulently misstated the actual value of his assets to claimant, and concluded as a matter of law that this vitiated the antenuptial contract. Therefore, he filed a decree dismissing the petition to vacate the widow's election, and also filed an adjudication making awards consistent therewith. Exceptions to his decree and adjudication are now before the court.

In Hofkin Estate, 38 D. & C. 2d 175, this court, on January 21, 1966, in a unanimous opinion, summarized the law applicable to this case; viz.:

"The law is settled beyond question that the findings of fact by an Auditing Judge, like the verdict of a jury, will not be disturbed unless clear error be shown. The credibility of witnesses and the weight to be given to their testimony can be much better determined by the Judge before whom they appeared, who had the opportunity to study their demeanor while on the witness stand: see Collings Estate, 405 Pa. 280 (1961); Pavlinko Estate, 399 Pa. 536 (1960); Hanna Estate, 383 Pa. 196, 199 (1955); Blecher Estate, 381 Pa. 138, 143 (1955); Harbison Estate, 365 Pa. 468, 473 (1950). In the present case, our study of the record leads us to the conclusion that not only was there no error in the Auditing Judge's findings, but that they were the only reasonable findings that could have been made under the circumstances of this case".

We have carefully examined the voluminous record

in the instant case, developed during 10 days of hearings. We find no reversible error in the findings of fact or conclusions of law made by the learned auditing judge.

Harry B. Berk, Esq., scrivener of the antenuptial agreement, testified that decedent stated to him in claimant's presence that his assets were of a value "in the neighborhood of about $100,000". This is the same amount that claimant had informed Mr. Berk that decedent had disclosed to her before she and decedent consulted him about the agreement. Mr. Berk urged decedent to give him a written statement of his assets to attach to the antenuptial agreement. When decedent refused to do this, he advised claimant that she would have to rely on decedent's stated valuation of his assets, and he warned decedent that if this statement of his assets were inaccurate, this might cause the antenuptial agreement to be set aside. Notwithstanding this warning, decedent again refused to set forth his assets in writing, and reiterated that although he had not disclosed to his intended wife "the nature of his estate", it was worth $100,000 and "maybe it might be worth $125,000". In fact, his assets at this time were valued at $263,711, and his daughter, Mrs. Katz, testified that she believed they were then worth $300,000.

In short, decedent deliberately and grossly understated his assets to claimant as an inducement to her to sign the antenuptial agreement. Claimant relied upon decedent's statement of his assets in executing this agreement. There is no credible evidence to show that claimant had knowledge that his assets were greater than then stated by him. Exceptants produced many witnesses and much vague, general testimony to indicate that claimant knew decedent had assets more valuable than those he disclosed to her. The auditing judge did not believe this evidence; nor do we. Moreover, such testimony is not sufficient to show knowledge

upon the part of claimant which is contrary to decedent's statement of his assets at the time of the execution of the agreement: Kline v. Kline, 57 Pa. 120.

Whether claimant would have accepted the $15,000 decedent gave her, if she had known the true value of his estate at the time the antenuptial contract was executed, is not for us to conjecture. Suffice it to say, she relied upon his statement of his assets. Furthermore, in our opinion, $15,000 is not a proper settlement for a widow who has lived with her husband in her own home for three years, when his estate at the time of marriage and death was in excess of $260,000. Therefore, the antenuptial agreement is voidable: Kaufmann Estate, 404 Pa. 131.

Significantly, the widow is very poorly educated. She testified on crossexamination: "I can read a little bit. I went to night school for a few seasons". Moreover, she testified that she did not understand antenuptial contracts. But she signed this agreement because decedent wanted her to do so and told her that it was good for both of them. She completely relied upon decedent's representations. Mr. Berk testified: "I merely asked her if she knew of her intended husband's assets, and she said only from what he told her; and that she was taking his word for it".

Pennsylvania has always carefully protected the rights of a widow in her husband's estate, particularly, as in this case, where the husband and wife have lived harmoniously together for years prior to the death of the husband. Therefore, a strong burden was placed upon decedent, who requested his intended wife to renounce all of her widow's rights, to make a full and complete disclosure of his assets: McClellan Estate, 365 Pa. 401. Decedent did not do this. In fact, he deliberately refused to make a written statement of his assets, and orally stated that his assets were less than one-half what they actually were. It follows that

the antenuptial agreement was voidable. Hence, the widow is entitled to take against the will and to receive her share of decedent's estate given to her by the Intestate Act.

Exceptants challenge the action of the auditing judge in scheduling an additional hearing on his own motion to afford claimant an opportunity to testify in rebuttal. The law is clear that this was a matter in the sole discretion of the auditing judge. See Weiss Will, 366 Pa. 456. There is no merit in this exception.

Exception is also grounded upon the premise that the testimony of Harry B. Berk was barred by the so-called Dead Man's Act of May 23, 1887, P. L. 158, 28 PS §322. This exception is not well taken, because: (1) exceptants waived any objection under this statute by failing to object thereto prior to the taking of this testimony, and by lengthy cross-examination of the witness without reserving any objection under the statute; (2) there is not a scintilla of evidence in this case to show that Mr. Berk has any specific interest in counsel fee; and (3) any right of Mr. Berk to counsel fee is not a direct interest to bar his testimony under the act. See Gaston Estate, 361 Pa. 105; Commonwealth Trust Company, Admr. v. Szabo, 391 Pa. 272, and Shobert v. Brookville Bank and Trust Company, 132 Pa. Superior Ct. 365.

Exceptants also argue that Mr. Berk was precluded from testifying because he represented both decedent and claimant. Mr. Berk testified that he had previously represented claimant. Moreover, he testified that when decedent and she came to see him, he urged decedent to have his own lawyer draw the antenuptial agreement. When decedent insisted that he prepare it, he did so, then gave the agreement to decedent to show to his own lawyer, and decedent "eventually brought it back and said it was satisfactory; and then eventually they signed it . . ."

Exceptants argue that claimant is, and at the time of the execution of the antenuptial contract was, a wealthy woman. The only evidence on this point consisted of several vague generalities in the testimony of exceptants' witnesses. *Per contra,* claimant's counsel offered to prove by claimant's testimony and supporting exhibits the precise assets she owned, and the value thereof. However, exceptants' counsel objected thereto, and the evidence was not produced. The record does not support this exception.

There is no merit in any of the exceptions but no. 13. At the suggestion of the auditing judge, and with his express consent and approval, we sustain exception no. 13. We are all satisfied that the $15,000 received by the widow, as the consideration for the antenuptial contract, should be credited on account of her distributive share of decedent's estate. The adjudication will be modified accordingly.

McClellan Estate, 365 Pa. 401, specifically answers most of the arguments presented by exceptants in the instant case. In addition to the quotations therefrom appearing in the adjudication, the following statements by Mr. Justice Bell, now Chief Justice Bell, at pages 405 and 406, are germane:

"Ante-nuptial agreements depend for their validity upon the presence of one of two factors, namely: A reasonable provision for the wife, or in the absence of such provision, a full and fair disclosure to the wife of the husband's worth: Flannery's Estate, 315 Pa. 576, 580, 173 A. 303; Warner's Estate, 210 Pa. 431, 59 A. 113; Emery Estate, 362 Pa. 142, 66 A. 2d 262.

"Where the provision made for the wife is grossly disproportionate to the value of the husband's estate, fraudulent concealment will be presumed and the burden of proof thrown on him to show that full disclosure had been made: Flannery's Estate, 315 Pa. 576, 173 A. 303; Warner's Estate, 210 Pa. 431, 59 A. 113;

Neely's Appeal, 124 Pa. 406, 16 A. 883; Groff's Estate, 341 Pa. 105, 19 A. 2d 107; Clark's Estate, 303 Pa. 538, 154 A. 919.

" . . .

"The executors contend that such a disclosure was made because the agreement recites that it 'is entered into by each party with full knowledge on the part of each of the extent and probable value of all of the property, or estate, of the other. . . ' . Such a provision is prima facie evidence that a full and fair disclosure had been made by the husband to the wife of his worth: McCready's Estate, 316 Pa. 246, 175 A. 554; Smith's Appeal, 115 Pa. 319, 8 A. 582; Emery Estate, 362 Pa. 142, 66 A. 2d 262. However, this statement in the agreement is rebutted and completely overcome by the facts which appeared in detail in said agreement, namely, that the Doctor had unintentionally or intentionally materially misrepresented the value of his personal property in that he disclosed said property had a value of $132,000, whereas its value was $519,000".

We cannot fail to comment upon the inexcusable conduct of counsel for exceptants in vilifying and castigating Harry B. Berk, Esq., who is now in sadly declining health and blind. Specifically, Mr. Lawler stated, in his brief and orally: "If the situation occurred as Mr. Berk said it did, then Mr. Berk has convicted himself of malpractice. Mr. Berk, however, tops that by standing to gain 12½% of $90,000.00 as a reward for his own malpractice". There is absolutely nothing in this large record to support this accusation. Harry B. Berk, Esq., is well known to, and highly respected by, this court. He has a reputation for unimpeachable veracity and integrity. We fully concur with the auditing judge in placing complete reliance upon his testimony, taken under unusual circumstances. We condemn Mr. Lawler's intemperate and unwarranted

attack upon a well regarded and seriously ill fellow member of the bar.

Accordingly, exception no. 13 is sustained; and for the reasons stated herein and in the able adjudication, the remaining exceptions are dismissed, and the decree of the auditing judge, dismissing the petition to vacate the widow's election, and his adjudication, as modified herein, are confirmed absolutely.